NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-1111

# United States Court of Appeals
## For the Eighth Circuit

_____

PLANNED PARENTHOOD GREAT RIVERS– MISSOURI, et al.,

*Plaintiffs-Appellees*

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, et al.,

*Defendants-Appellants.*

On Appeal from the
United States District Court for the Western District of Missouri
Case Nos. 2:24-cv-04157-BP; 2:24-cv-04158-BP; 2:24-cv-04159-BP

## APPELLANTS' BRIEF

**ANDREW T. BAILEY**
ATTORNEY GENERAL

JOSHUA M. DIVINE
  SOLICITOR GENERAL
Office of the Attorney General
207 W. High St.
Jefferson City, Missouri 65102
Phone: (573) 751-8870

Dominic X. Barceleau, #76510MO
  *Assistant Attorney General*
Office of the Attorney General
Old Post Office Building
815 Olive St, Suite 200
St. Louis, MO 63101
Phone: (314) 340-7366
Dominic.Barceleau@ago.mo.gov

*Counsel for Appellants*

## SUMMARY OF THE CASE

This appeal presents an issue of first impression in this Court, which the district court recognized has split federal circuits: whether a state commission that can hear a case raising federal questions is a "State court" for the purposes of the federal removal statute, 28 U.S.C. § 1441. The answer here is yes. The Missouri commission's judges are appointed by the governor and confirmed by the state senate, it hears adversarial proceedings, it follows procedural and evidentiary rules, parties are represented by counsel, and it issues written findings of fact and conclusion of law. On top of all that, it hears cases involving federal questions, and if the commission is not deemed a "State court," that would risk depriving defendants of their right under federal law to have cases involving federal questions heard in federal court.

The underlying issues in this case present significant federal questions arising under federal law and the U.S. Constitution. But because the district court misread § 1441 and Supreme Court precedent, those federal questions cannot be addressed by a federal court. The district court's decision should be reversed.

Appellants respectfully request 15 minutes of oral argument.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE ........................................................................i

TABLE OF CONTENTS ........................................................................ii

TABLE OF AUTHORITIES ..................................................................iv

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES....................................................................5

STATEMENT OF THE CASE ..............................................................7

I.    Missouri law prohibits public funding of abortion facilities. ..........7

II.   Planned Parenthood sued the Department of Social Services in the Administrative Hearing Commission. .................................8

III.  The Department of Social Services removed the case from the Administrative Hearing Commission, and the district court remanded...................................................................................9

SUMMARY OF THE ARGUMENT .....................................................12

STANDARD OF REVIEW....................................................................16

ARGUMENT .......................................................................................17

I.    The ordinary meaning of "State court" in the federal removal statute covers the Administrative Hearing Commission..............17

    A.   The ordinary meaning of "State court" is broad..................18

    B.   The Administrative Hearing Commission is a court within the plain meaning of "State court."...........................23

    C.   The district court's interpretation fails to capture the ordinary meaning of the text. ...............................................26

II.   The district court's interpretation of "State court" undermines the purpose of the removal statute of ensuring that federal courts decide federal questions.....................................................29

Appellate Case: 25-1111    Page: 3    Date Filed: 04/01/2025 Entry ID: 5501982

A. Characterization of a tribunal under state law is not dispositive for removal purposes. ..........................................29

B. The district court's analysis undermines federal supremacy and the uniform application of federal law........33

III. Under the Supreme Court's precedent, the Administrative Hearing Commission is a "State court." ........................................36

A. Controlling Supreme Court precedent requires courts to look at the nature of a tribunal to determine whether it is a "State court" for purposes of removal. .........37

B. The Supreme Court and lower federal courts followed *Upshur County* for decades...................................................41

C. The Administrative Hearing Commission is a "State court" under the *Upshur County* line of cases......................46

D. The district court misread *Upshur County*. .........................49

E. Courts applying the literal test have misread the text of § 1441 and the Supreme Court's precedent......................53

IV. The Department's right to have this case heard in federal court must be protected...............................................................57

CONCLUSION .................................................................................60

CERTIFICATE OF COMPLIANCE ................................................61

CERTIFICATE OF SERVICE...........................................................61

Appellate Case: 25-1111  Page: 4  Date Filed: 04/01/2025  Entry ID: 5501982

# TABLE OF AUTHORITIES

## Cases

*Alpine Glass, Inc. v. Country Mut. Ins.*,
   686 F.3d 874 (8th Cir. 2012) ..................................................................2

*Am. Ins. v. 356 Bales of Cotton*,
   26 U.S. 511 (1828) ...............................................................................22

*Ark. State Conf. NAACP v. Ark. Bd. of Apportionment*,
   86 F.4th 1204 (8th Cir. 2023) .........................................................12, 13

*Balloons Over the Rainbow, Inc. v. Dir. of Revenue*,
   427 S.W.3d 815 (Mo. 2014) ..................................................................24

*Buljic v. Tyson Foods, Inc.*,
   22 F.4th 730 (8th Cir. 2021) .................................................................16

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943) ...............................................................................11

*Chicago, R.I. & P.R. Co. v. Stude*,
   346 U.S. 574 (1954) .........................................................................58, 59

*City of Indianapolis v. Chase Nat'l Bank*,
   314 U.S. 63 (1941) .................................................................................58

*Cohen v. Beneficial Indus. Loan Corp.*,
   337 U.S. 541 (1949) .................................................................................2

*Cohens v. State of Virginia*,
   19 U.S. 264 (1821) .................................................................................36

*Colorado Midland Ry. Co. v. Jones*,
   29 F. 193 (C.C.D. Colo. 1886) .........................................................40, 41

*Comm'rs of Road Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co.*,
   257 U.S. 547 (1922) .......................................................................passim

iv

*Convent Corp. v. City of N. Little Rock,*
 784 F.3d 479 (8th Cir. 2015).......................................................57, 59

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.,*
 603 U.S. 799 (2024)........................................................................19

*Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Tr. Co.,*
 197 U.S. 178 (1905)........................................................................58

*Doe v. SSM Health Care Corp.,*
 126 F.4th 1329 (8th Cir. 2025).......................................................16

*Does v. Gillespie,*
 867 F.3d 1034 (8th Cir. 2017).........................................................11

*Donaldson v. Mo. State Bd. of Registration for the Healing Arts,*
 615 S.W.3d 57 (Mo. 2020)..............................................................25

*England v. La. State Bd. of Med. Exam'rs,*
 375 U.S. 411 (1964)........................................................................59

*Ex parte Bakelite Corp.,*
 279 U.S. 438 (1929)..................................................................22, 33

*Floeter v. C. W. Transport*
 597 F.2d 1100 (7th Cir. 1979)....................................................45, 48

*Gate Gourmet, Inc. v. Dir. of Revenue,*
 504 S.W.3d 59 (Mo. 2016)..............................................................25

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
 545 U.S. 308 (2005)........................................................................34

*Haywood v. Drown,*
 556 U.S. 729 (2009)..................................................................15, 34

*In re City of Kinloch,*
 242 S.W.2d 59 (Mo. 1951)..............................................................33

*In re Goetz,*
 95 F.4th 584 (8th Cir. 2024)...........................................................37

v

*In re Silvies River*,
199 F. 495 (D. Or. 1912) .............................................................. 34, 42

*In re The Jarnecke Ditch*,
69 F. 161 (C.C.D. Ind. 1895) ............................................................ 43

*Iverson v. United States*,
973 F.3d 843 (8th Cir. 2020) ............................................................ 28

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ...................................................................... 26

*Kolibash v. Comm'n on Legal Ethics of W. Va. Bar*,
872 F.2d 571, 576 (4th Cir. 1989) ...................................................... 46

*Lamar, Archer & Cofrin, Llp v. Appling*,
584 U.S. 709 (2018) ...................................................................... 52

*Liechty v. Kansas City Bridge Co.*,
162 S.W.2d 275 (Mo. 1942) .............................................................. 32

*Marbury v. Madison*,
1 Cranch 137 (1803) ...................................................................... 31

*Martin v. Hunter's Lessee*,
14 U.S. 304 (1816) .................................................................... 33, 35

*Medina v. Planned Parenthood S. Atl.*,
No. 23-1275 (Dec. 18, 2024) .............................................................. 9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ......................................................................... 1

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
584 U.S. 325 (2018) ...................................................................... 22

*Or. Bureau of Lab. & Indus. ex rel. Richardson v. U.S. West
Commc'ns*, 288 F.3d 414 (9th Cir. 2002) .......................................... 53, 54

*Perrin v. United States*,
444 U.S. 37 (1979) ....................................................................... 27

Appellate Case: 25-1111    Page: 7    Date Filed: 04/01/2025 Entry ID: 5501982

*Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1,*
  607 F.3d 1251 (10th Cir. 2010) ........................................................ 56

*Puerto Rico v. Franklin Cal. Tax-Free Tr.,*
  579 U.S. 115 (2016) ........................................................................... 37

*Quackenbush v. Allstate Ins.,*
  517 U.S. 706 (1996) ....................................................................... 1, 3

*Sandifer v. U.S. Steel Corp.,*
  571 U.S. 220 (2014) ........................................................................... 27

*Searl v. School District No. 2,*
  124 U.S. 197 (1888) ..................................................................... 39, 40

*Seminole Tribe of Fla. v. Florida,*
  517 U.S. 44 (1996) ............................................................................. 55

*Shamrock Oil & Gas Corp. v. Sheets,*
  313 U.S. 100 (1941) ..................................................................... 14, 30

*Six Flags Theme Parks, Inc. v. Dir. of Revenue,*
  179 S.W.3d 266 (Mo. 2005) .............................................................. 25

*Smith v. Douglas Cnty.,*
  254 F. 244 (8th Cir. 1918) ........................................................... 42, 56

*State Tax Comm'n v. Admin. Hearing Comm'n,*
  641 S.W.2d 69 (Mo. 1982) ........................................................... 31, 32

*Stoll v. Hawkeye Cas. Co.,*
  185 F.2d 96 (8th Cir. 1950) ......................................................... 14, 30

*Sun Buick v. Saab Cars USA,*
  26 F.3d 1259 (3d Cir. 1994) ........................................................ 54, 55

*Thompson Truck & Trailer, Inc. v. United States,*
  901 F.3d 951 (8th Cir. 2018) ............................................................ 18

*Tool & Die Makers Lodge No. 78 v. Gen. Elec. Co.,*
  70 F. Supp. 945 (E.D. Wis. 1959) ........................................... 43, 44, 48

vii

*United States v. Jungers,*
    702 F.3d 1066 (8th Cir. 2013) ........................................................... 18

*United States v. Saeugling,*
    826 F. App'x 577 (8th Cir. 2020) ...................................................... 26

*Upshur County v. Rich,*
    135 U.S. 467 (1890) ............................................................... passim

*Utah Junk Co. v. Porter,*
    328 U.S. 39 (1946) ....................................................................... 26

*Volkswagen de Puerto Rico v. Puerto Rico Labor Relations Board,*
    454 F.2d 38 (1st Cir. 1972) ............................................ 26, 44, 45, 48

*Webb v. Farmers of N. Am., Inc.,*
    925 F.3d 966 (8th Cir. 2019) ............................................................. 2

*Williams v. Ragnone,*
    147 F.3d 700 (8th Cir. 1998) ........................................................... 57

*Williams v. Reed,*
    145 S. Ct. 465 (2025) ............................................................... 15, 34

*Wirtz Corp. v. United Distillers & Vintners North America*
    224 F.3d 708 (7th Cir. 2000) ........................................................... 46

*Yates v. United States,*
    574 U.S. 528 (2015) ...................................................................... 18

*Zayo Grp., LLC v. Norfolk S. Ry. Co.,*
    2023 WL 8230499 (4th Cir. Nov. 28, 2023) ...................................... 46

## Constitutional Provisions

U.S. Const. Art. VI, cl. 2 ...................................................................... 33

Appellate Case: 25-1111    Page: 9    Date Filed: 04/01/2025    Entry ID: 5501982

**Statutes**

10 U.S.C. § 941 ........................................................... 23

26 U.S.C. § 7441 ......................................................... 23

28 U.S.C. § 1291 ........................................................... 1

28 U.S.C. § 1331 .................................................. 1, 9, 36

28 U.S.C. § 1367 ........................................................... 1

28 U.S.C. § 1441 ................................................... passim

28 U.S.C. § 1442 ......................................................... 46

28 U.S.C. § 1447 .................................................... 3, 11

28 U.S.C. § 171 ........................................................... 22

38 U.S.C. § 7251 ......................................................... 23

42 U.S.C. § 1396a ..................................................... 1, 8

Act of June 25, 1948, ch. 646, 62 Stat. 937 ...................... 18

Mo. Rev. Stat. § 188.207 ............................................... 7

Mo. Rev. Stat. § 208.152 ............................................... 7

Mo. Rev. Stat. § 208.164 ............................................... 7

Mo. Rev. Stat. § 536.010 ......................................... 24, 47

Mo. Rev. Stat. § 536.068 ......................................... 24, 48

Mo. Rev. Stat. § 536.070 ......................................... 24, 48

Mo. Rev. Stat. § 536.075 ......................................... 24, 48

Mo. Rev. Stat. § 536.077 ......................................... 24, 48

Mo. Rev. Stat. § 536.090 ......................................... 24, 48

Appellate Case: 25-1111    Page: 10    Date Filed: 04/01/2025 Entry ID: 5501982

Mo. Rev. Stat. § 536.100.................................................................25

Mo. Rev. Stat. § 621.015.................................................................23

Mo. Rev. Stat. § 621.045.................................................24, 47, 48

Mo. Rev. Stat. § 621.145.................................................................57

Mo. Rev. Stat. § 621.198.................................................................25

Rev. Stat. of the U.S., Title XIII, ch. 7, § 639 ...........................52

## Regulations

1 C.S.R. § 15-3.230 .......................................................................25

1 C.S.R. § 15-3.250. ......................................................................25

1 C.S.R. § 15-3.350 .......................................................................25

1 C.S.R. § 15-3.380 .......................................................................25

1 C.S.R. § 15-3.390 .......................................................................25

1 C.S.R. § 15-3.420 .................................................................25, 48

1 C.S.R. § 15-3.425 .................................................................25, 48

## Rules

Fed. R. App. P. 4............................................................................4

Fed. R. App. P. 32..........................................................................61

Appellate Case: 25-1111    Page: 11    Date Filed: 04/01/2025 Entry ID: 5501982

# Other Authorities

14C Charles Alan Wright & Arthur R. Miller,
  Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed. 2024)................. 30, 58

2 Oxford English Dictionary (1933) ....................................... 19, 20, 23, 33

Antonin Scalia & Bryan A. Garner,
  Reading Law: The Interpretation of Legal Texts (2012) ............. 13, 27

Black's Law Dictionary (4th ed., rev. 1968)............................................28

Black's Law Dictionary (4th ed. 1951) ........................................ 10, 21, 27

Scott R. Haiber, *Removing the Bias Against Removal*,
  53 Cath. U. L. Rev. 609 (2004) ..........................................................36

The Federalist No. 80.............................................................................35

Webster's New Int'l Dictionary (3d ed. 1971) ........................................28

Webster's New Int'l Dictionary (2d ed. 1943) ................................. passim

William Eskridge,
  Interpreting Law (2016) ....................................................................17

# JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because Planned Parenthood's petition raises questions under the First and Fourteenth Amendment to the U.S. Constitution and the Social Security Act at 42 U.S.C. § 1396a(a)(23). The district court had supplemental jurisdiction over the Planned Parenthood's remaining claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as the federal claims.

This Court has appellate jurisdiction over the district court's order remanding the case under 28 U.S.C. § 1291. The district courts' remand order is "final" for the purposes of appellate jurisdiction. *See Quackenbush v. Allstate Ins.*, 517 U.S. 706, 714 (1996). The order "puts the litigants in this case 'effectively out of court,' and its effect is 'precisely to surrender jurisdiction of a federal suit to a state court.'" *Id.* (citation omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 11, n.11 (1983)). "When a district court remands a case to a state court, the district court disassociates itself from the case entirely, retaining nothing of the matter on the federal court's docket." *Id.* As a result, the order is reviewable under § 1291.

1

Alternatively, this Court has jurisdiction under the collateral order doctrine. *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Jurisdiction is proper under the collateral order doctrine "if the order appealed from (1) conclusively determines a disputed issue; (2) which is an important issue completely separate from the merits; and (3) is effectively unreviewable on appeal from a final judgment." *Webb v. Farmers of N. Am., Inc.*, 925 F.3d 966, 970 (8th Cir. 2019) (quoting *Alpine Glass, Inc. v. Country Mut. Ins.*, 686 F.3d 874, 877 (8th Cir. 2012)). Those three criteria are satisfied.

*First*, the district court's remand order conclusively determines the issue presented in this appeal. On remand, neither the AHC nor a state circuit court—if the case gets to that point—will consider whether the AHC is a "State court" under the 28 U.S.C. § 1441(a).

*Second*, this appeal presents an important issue of first impression for this Court, and one on which the district court acknowledged other federal circuits are split. Opportunities to interpret the federal removal statute rarely arise, and the district courts in this circuit need guidance. The Supreme Court has recognized that a remand order that "surrender[s] jurisdiction" over federal questions to a state court is

2

"sufficiently important to warrant an immediate appeal." *Quackenbush*, 517 U.S. at 714. Additionally, interpretation of § 1441(a) is completely separate from the merits of the case, which present questions under the First and Fourteenth Amendment to the United States Constitution, the Social Security Act, and the Missouri Constitution.

*Third*, this issue will be unreviewable on an appeal from final judgment. Any appeal in the Missouri court system will not—and could not—address the issues presented in this appeal. Therefore, this Court has jurisdiction under the collateral order doctrine.

For the reasons discussed in the Appellants' Suggestion in Opposition to Planned Parenthood's Motion to Dismiss, this appeal is not barred by 28 U.S.C. § 1447. *See Appellants' Brief in Opposition to Motion to Dismiss* (Feb. 18, 2025). In summary, § 1447 makes only two kinds of remands unreviewable: remands based on lack of subject matter jurisdiction and remands based on procedural defects. This case was not remanded for either reason. It was remanded because the district court held that the removal statute did not apply because, in the district court's view, Missouri's Administrative Hearing Commission is not a "State court."

Appellate Case: 25-1111    Page: 15    Date Filed: 04/01/2025 Entry ID: 5501982

The district court issued its order and judgment on January 8, 2025. App. 139, 146; R. Doc. 28, at 1; R. Doc. 29, at 1. Appellants timely filed their notice of appeal on January 21, 2025. R. Doc. 30, at 1. The Department therefore filed its joint notice of appeal with the district clerk within 30 days after entry of the judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A).

Appellate Case: 25-1111    Page: 16    Date Filed: 04/01/2025 Entry ID: 5501982

# STATEMENT OF ISSUES

**I.** **Whether the district court incorrectly held that Missouri's Administrative Hearing Commission was not a "State court" for the purposes of the removal statute, 28 U.S.C. § 1441.**

- *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).

- *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020).

- *Stoll v. Hawkeye Casualty Co.*, 185 F.2d 96 (8th Cir. 1950).

- *Volkswagen de Puerto Rico v. Puerto Rico Labor Relations Board*, 454 F.2d 38 (1st Cir. 1972).

**II.** **Whether the 8th Circuit should follow the Supreme Court's decision in *Upshur County v. Rich*, 135 U.S. 467 (1890), and look to a tribunal's function to determine whether a tribunal is acting as a "state court" for the purposes of removal.**

- *Upshur County v. Rich*, 135 U.S. 467 (1890).

- *Commissioners of Road Improvement District No. 2 v. St. Louis Southwest Railway Co.*, 257 U.S. 547 (1922).

- *Smith v. Douglas Cnty.*, 254 F. 244 (8th Cir. 1918).

- *Tool & Die Makers Lodge No. 78 v. General Electric Co.*, 170 F. Supp. 945 (E.D. Wis. 1959).

5

**III.** **Whether a state can deny a party the right to have federal questions decided in a federal court by arranging its court system to thwart the federal removal statute.**

- *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964).

- *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574 (1954).

- *City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941).

- *Convent Corp. v. City of North Little Rock*, 784 F.3d 479 (8th Cir. 2015).

Appellate Case: 25-1111    Page: 18    Date Filed: 04/01/2025 Entry ID: 5501982

## STATEMENT OF THE CASE

**I.    Missouri law prohibits public funding of abortion facilities.**

During the 2024 Legislative Session, the Missouri Legislature passed, and the Governor signed, House Bill 2634.  The law makes it "unlawful for any public funds to be expended to any abortion facility, or to any affiliate of such abortion facility."  Mo. Rev. Stat. § 188.207; *see also* § 188.015 (defining "abortion facility" and "affiliate").    More specifically, HB 2634 prohibits MO HealthNet—Missouri's Medicaid program—from making any payments to abortion facilities and their affiliates.  *See* Mo. Rev. Stat. § 208.152.1(6), (12).  And the law requires the Department of Social Services ("the Department")—which administers MO HealthNet—to "suspend, revoke, or cancel any contract or provider agreement" when it determines that the provider is "not qualified to perform the service or services required" because the provider "[i]s an abortion facility . . . or an affiliate."  *See* Mo. Rev. Stat. § 208.164.10.

Because Planned Parenthood is an abortion facility or affiliate, the Department notified Planned Parenthood that it was terminating Planned Parenthood's enrollment in MO HealthNet following this change

7

in law. *See, e.g.*, R. Doc. 4-1, No. 2:24-cv-04157 (Sept. 6, 2024). The termination letters informed Planned Parenthood that the decision was final and that they could seek review in the Administrative Hearing Commission. *Id.*

## II. Planned Parenthood sued the Department of Social Services in the Administrative Hearing Commission.

Planned Parenthood filed a petition in the Missouri Administrative Hearing Commission, alleging that their termination from MO HealthNet "violates federal law, the United States Constitution, and the Missouri Constitution." App. 009; R. Doc. 1-1, at 2. In Count I, Planned Parenthood alleged that its termination from MO HealthNet violated the Social Security Act at 42 U.S.C. § 1396a(a)(23). App. 019; R. Doc. 1-1, at 12. In Counts II and III, they alleged that their termination violates the First Amendment and the Fourteenth Amendment's Equal Protection Clause. App. 020–023; R. Doc. 1-1, at 13–16. And Counts IV and V alleged violations of the Missouri Constitution's freedom of assembly and equal protection guarantees. App. 023–025; R. Doc. 1-1, at 16–18. Planned Parenthood's petition acknowledges that the Department's decision to terminate them from MO HealthNet was required by HB 2634. App. 015–017; R. Doc. 1-1, at 8–10. The prayer for relief expressly

8

asks the AHC to "declar[e] that HB 2634 is unlawful."  App. 025; R. Doc. 1-1, at 18.

The merits of Planned Parenthood's claims are not at issue in this appeal.  What matters is that the petition raises federal questions. Indeed, some of the issues raised in Planned Parenthood's petition are currently pending before the United States Supreme Court in a cert. petition that was recently granted.  *See Medina v. Planned Parenthood S. Atl.*, No. 23-1275 (Dec. 18, 2024) (oral argument to be held April 2, 2025).

## III.  The Department of Social Services removed the case from the Administrative Hearing Commission, and the district court remanded.

Because the federal questions raised in Planned Parenthood's petition may be dispositive, the Department removed the case from the AHC to the United States District Court for the Western District of Missouri.  The Notice of Removal explained a defendant can remove a case from State court whenever the "district courts of the United States have original jurisdiction."  App. 043; R. Doc. 1, at 2 (quoting 42 U.S.C. § 1441(a)).  And under 42 U.S.C. § 1331, federal "district courts shall have

original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Planned Parenthood moved to remand the case, but did not deny that its petition includes federal questions within the district court's jurisdiction. Instead, they argued that the "the Administrative Hearing Commission is not a 'court,'" so the case "cannot be removed to federal court." App. 136–37; R. Doc. 17, at 1–2.

The district court granted Planned Parenthood's motion to remand. App. 139; R. Doc. 28. While acknowledging that Planned Parenthood's petition raised federal questions and thus rejecting the argument that it lacked jurisdiction, App. 141; R. Doc. 28, at 3 n.2, the court found that "the AHC is not a 'State court.'" App. 141; R. Doc. 28, at 3. And acknowledging a circuit split on the issue, it relied on cases from the other circuits that have adopted a "literal" test to interpret § 1441. The court explained that because the "AHC is not described in Article V" of the Missouri Constitution, it cannot be considered a "court." *Id*. The Court expressly rejected the so-called "functional" test adopted by the Supreme Court in *Upshur County v. Rich* because "the matter was undeniably in a state court." App. 142; R. Doc. 28, at 4. And the court dismissed other

10

circuits' reliance on *Upshur* when adopting the functional approach as what the district court believed is an incorrect "reading of a Supreme Court decision." App. 144; R. Doc. 28, at 6.

The district court declined to reach two other arguments in Planned Parenthood's motion to remand. The court noted that its decision to remand "makes it unnecessary to consider whether abstention pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is appropriate" and that it "also need not consider the effect of *Does v. Gillespie*, 867 F.3d 1034 (8th Cir. 2017)." App. 144–45; R. Doc. 28, at 6 n.6.

The Department timely appealed. *See* Notice of Appeal, R. Doc. 30. On February 5, 2025, Planned Parenthood moved to dismiss this appeal, arguing that the district court's remand order was not reviewable under 28 U.S.C. § 1447. *See Plaintiffs-Appellees' Motion to Dismiss Appeal* (Feb. 5, 2025). The Department filed a brief in opposition, showing that this is appeal is not barred by § 1447 because the remand was not based on a lack of subject matter jurisdiction or a procedural defect. *See Appellants' Brief in Opposition to Motion to Dismiss* (Feb 18, 2025). Following full briefing on the question, the Court took Planned Parenthood's Motion to Dismiss with the case. *See Order* (Feb. 24, 2025).

11

## SUMMARY OF THE ARGUMENT

This case presents a question of statutory interpretation: What does the phrase "brought in a State court" mean in the federal removal statute? *See* 28 U.S.C. § 1441(a). Other courts, including the district court below, framed this question in terms of a "formal" versus "functional" analysis. *See* App. 144; R. Doc. 28, at 6. That framing distorts the question, which should be: What is the ordinary meaning of the statute's text? This Court should not just "follow what other courts have done," as the district court did. *Arkansas State Conf. NAACP v. Arkansas Bd. of Apportionment*, 86 F.4th 1204, 1216 n.7 (8th Cir. 2023). Rather, the Court should "start with the text, apply first principles, and use the interpretive tools the Supreme Court has provided." *Id*. Using that approach, the district court's decision was wrong for four reasons.

*First*, starting with the text, the ordinary meaning § 1441(a) covers the AHC in this suit. The district court's interpretation of the removal statute erred by focusing on how Missouri *brands* its tribunals rather than relying on the ordinary meaning of the statute. The court below failed to consider that the plain, everyday meaning of a "court," particularly in the state context, is broader than just those tribunals

12

created by a state's constitutional equivalent of Article III. As dictionaries published at the time the removal statute was enacted reveal, a "court" is simply a "tribunal established for the administration of justice." *See* Webster's New Int'l Dictionary 611 (2d ed. 1943). "Adhering to the fair meaning of the text (the textualist's touchstone) does not limit one to the hyperliteral meaning of each word in the text." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 356 (2012).

*Second*, the district court's decision also overlooks "first principles." *Arkansas State Conf. NAACP*, 86 F.4th at 1216 n.7. The removal statute implements important constitutional principles of supremacy and uniformity that are essential to the federal system of government. The purpose of removal is to guarantee defendants a federal forum to answer federal questions. Yet the district court's remand order threatens this right because, if the defendants are unable to remove now, it is unclear they will ever be able to do so. Planned Parenthood's claims arise under the Constitution and laws of the United States, and it thwarts the purpose of the removal statute to allow a state tribunal to be the sole arbiter of federal questions just because the tribunal is not labelled a

"court." The district court's approach would allow states to insulate important federal questions from federal courts by vesting jurisdiction over some suits in commissions, boards, or other tribunals that do not have "court" at the top of their letterhead.

In recognition of those principles, the Supreme Court expressly rejected the view that the removal statute should be interpreted by reference to state law. The removal statute must be "construed . . . irrespective of local law." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941). This Court has been equally clear, holding that the "question whether a civil action is removable and has been properly removed is one for the consideration of the federal court and is not controlled by State law." *Stoll v. Hawkeye Cas. Co.*, 185 F.2d 96, 99 (8th Cir. 1950). The district court's reading, empowering circumvention of federal courts when federal questions arise, is incorrect.

*Third*, the district court misread the Supreme Court's binding precedent in *Upshur County v. Rich*, 135 U.S. 467 (1890). *Upshur County* requires courts to look beyond a state tribunal's name and consider whether it acts like a court. While the *Upshur County* decision has been labeled the "functional" approach by some courts, it is a fundamentally

14

textualist approach. Subsequent Supreme Court decisions have confirmed that the dispositive question here is whether "the proceeding before it has all the elements of a judicial controversy" such that the tribunal is "functioning as" a court. *See Comm'rs of Road Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co.*, 257 U.S. 547, 557 (1922). Because the AHC functions as a court and is vested with judicial powers by statute, the Department must be allowed to remove to federal court.

*Fourth*, the Department has a right to have these federal claims decided by a federal court, and this may be its only chance at removal. If Planned Parenthood prevails in the AHC, the Department will be have to file an appeal in Missouri's circuit court. While all parties agree the case will be in a "State court," at that time the Department will be listed the *plaintiff* in the Missouri circuit court action, and the removal statute allows removal only "by the defendant or the defendants." 28 U.S.C. § 1441. Supreme Court precedent—reaffirmed this term—make clear that federal courts cannot "allow the Supremacy Clause to be 'evaded'" by a state's configuration of its judicial system. *Williams v. Reed*, 145 S. Ct. 465, 472 (2025) (quoting *Haywood v. Drown*, 556 U.S. 729, 742 (2009)). To avoid that problem this Court should, at a minimum, clarify

15

*when* the Department could remove this case: if not from the AHC, then at least from the Missouri circuit court even if they are nominally the plaintiffs.

## STANDARD OF REVIEW

This Court "review[s] a district court's grant of a motion to remand—and related questions of statutory interpretation—de novo." *Doe v. SSM Health Care Corp.*, 126 F.4th 1329, 1332 (8th Cir. 2025) (quoting *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021)).

Appellate Case: 25-1111    Page: 28    Date Filed: 04/01/2025 Entry ID: 5501982

## ARGUMENT

The district court's decision was wrong for four reasons: (1) it applied a wooden, literalist form of textualism that failed to capture the ordinary meaning of the statute's text (as confirmed by dictionaries published contemporaneously with the enactment of the removal statute), (2) it conflict with the principles of federalism inherent in the U.S. Constitution, (3) it misread the Supreme Court precedent that should have controlled its analysis, and (4) its decision may deny a defendant's right to have a federal court decide the federal issues here. The Court should hold that the AHC is a "State court" for the purposes of 28 U.S.C. § 1441, reverse the district court's decision, and remand to the district court with instructions to proceed with the case on the merits.

## I. The ordinary meaning of "State court" in the federal removal statute covers the Administrative Hearing Commission.

The district court claimed to be applying a "straightforward and ordinary interpretation of the word 'court.'" App. 144; R. Doc. 18, at 6. But the decision failed to capture "the ordinary meaning (or the 'everyday meaning' or the 'commonsense' reading) of the relevant statutory text." William Eskridge, Interpreting Law 33, 34–35 (2016) (footnote omitted).

17

Instead, the court improperly narrowed the meaning of the statute based on a reading that was either too literal or too technical. The everyday meaning of the word "court," reflected in contemporaneous dictionary definitions and common usage, includes tribunals like the AHC.

## A. The ordinary meaning of "State court" is broad.

"[W]hen a word is not defined by statute," this Court "normally construe[s] it in accord with its ordinary or natural meaning." *Thompson Truck & Trailer, Inc. v. United States*, 901 F.3d 951, 953 (8th Cir. 2018) (quoting *United States v. Jungers*, 702 F.3d 1066, 1071 (8th Cir. 2013)). "Ordinarily, a word's usage accords with its dictionary definition." *Id*. (quoting *Yates v. United States*, 574 U.S. 528, 537 (2015)).

Congress enacted the relevant text of § 1441(a) in 1948. *See* Act of June 25, 1948, ch. 646, 62 Stat. 937 ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed . . ."). Both popular and legal dictionaries from around that time define "court" in broad terms that include Missouri's AHC. Start with general-use dictionaries, which better reflect the common meaning of words. *The Oxford English Dictionary* (*OED*) defines "court" as "[a]n assembly of judges or other persons legally

18

appointed and acting as a tribunal to hear and determine any case, civil, ecclesiastical, military, or naval." *Court*, 2 Oxford English Dictionary 1091 (1933) (def. 11). And *Webster's Second New International Dictionary* (*Webster's Second*) defines it as the "persons duly assembled under authority of law for the administration of justice, whether specifically appointed to exercise only judicial powers, as most modern courts, or combining judicial with legislative powers, as often formerly, and still in some cases . . ." *Court*, Webster's New Int'l Dictionary 611 (2d ed. 1943). *Webster's Second* also defines "court" more generally as a "tribunal established for the administration of justice." *Id*. Because these sources were published around the same time as the removal statute, they are especially probative. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 810 (2024).

Those definitions refute the district court's narrow definition of "court." The everyday meaning of "court" is not limited to state tribunals that derive their powers from the state equivalent of Article III. *See* App. 141; R. Doc. 28, at 3 (noting that the "AHC is not described in Article V" of the Missouri Constitution). Courts are any "assembly of *judges or other persons legally appointed* and *acting as a tribunal* to hear and determine

19

*any case*," *OED* at 1091 (emphasis added), or any "tribunal established for the administration of justice." *Webster's Second* at 611. The more extensive definition in *Webster's Second* specifically rejects the distinction the district court tried to draw. A tribunal is considered a court "whether" it is "specifically appointed to exercise only judicial powers" or whether not, such that it "combin[es] judicial with legislative powers." *Id.*

Beyond general-use dictionaries, legal dictionaries published around when § 1441(a) was enacted confirm the broader public meaning of "court." *Black's Law Dictionary* includes both technical, legal definitions and more general understandings. For example, *Black's Law* defines "court" to include "[a] body in the government to which the administration of justice is delegated." *Court*, Black's Law Dictionary 425 (4th ed. 1951). To be sure, *Black's Law* does express the highly technical definition that the district court adopted: it offers one definition of "court" as "[a]n organ of the government, belonging to the judicial department, whose function is the application of laws to controversies brought before it and the public administration of justice." But *Black's Law* goes on to explain that "[t]he word 'court' is often *employed in*

20

*statutes otherwise than in its strict technical sense*, and is applied to various tribunals not judicial in their character." *Id.* (emphasis added). As explained in more detail below, that passage pinpoints the district court's error—it used the "strict technical sense" of "court," not the everyday, ordinary meaning that is the goal of statutory interpretation.

The broader meaning of "court" reflected in general-use and legal dictionaries reflects usage around the time § 1441(a) was enacted. Indeed, *Black's Law Dictionary* provides examples of *dozens* of different types of bodies referred to under the law as "courts," many of which would not satisfy the district court's narrow definition because they are not located within the judicial branch of the relevant government. *See id.* at 427–35. Examples include "Court of Arbitration of the Chamber of Commerce," *id.* at 428, "Court of Bankruptcy," *id.*, "Court of Claims," *id.* at 429, "Court of Customs and Patent Appeals," *id.*, "Court of County Commissioners," *id.*, and "Court-Martial." *Id.* at 427.

The district court held that the AHC was not a court because it was not "in a state's judicial system," *i.e.*, it is "not described in Article V" of the Missouri Constitution. *See* App. 141, 144; R. Doc. 28, at 3, 6. But many well-known federal tribunals were not created under Article III of

the U.S. Constitution and are still widely recognized as courts. For nearly 200 years, the Supreme Court has distinguished between "constitutional Courts" and "legislative Courts." *See Am. Ins. v. 356 Bales of Cotton*, 26 U.S. 511, 546 (1828). Both types of tribunals are "courts," but only "constitutional courts" "share in the exercise of the judicial power defined in" Article III of the Constitution. *Ex parte Bakelite Corp.*, 279 U.S. 438, 449 (1929). Legislative courts "may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it." *Id.* at 451. But they are still "courts" within the ordinary meaning of the term.

Thus we call Article I tribunals "courts" even though they were created by statute and do not exercise the "judicial power" conferred by Article III. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 334 (2018) ("Congress cannot 'confer the Government's "judicial Power" on entities outside Article III.'") (citation omitted). Examples include: the U.S. Court of Federal Claims, 28 U.S.C. § 171 (created in 1855 as the Court of Claims); the U.S. Tax Court, 26 U.S.C. § 7441 (created in 1924 and renamed the Tax Court of the United

States in 1942); the Court of Appeals for the Armed Forces, 10 U.S.C. § 941 (created in 1950 as the Court of Military Appeals); the Court of Appeals for Veterans Claims, 38 U.S.C. § 7251 (created in 1988); Likewise, the AHC can be a "court" even though it was created by statute, Mo. Rev. Stat. § 621.015, not Article V of the Missouri Constitution.

### B. The Administrative Hearing Commission is a court within the plain meaning of "State court."

When one applies the ordinary meaning of "court" to the text of § 1441, the AHC easily falls within that broad understanding.

*First*, the AHC is an "assembly of judges or other persons legally appointed," *OED* at 1091, or a group of "persons duly assembled under authority of law." *Webster's Second* at 611. The AHC was created by statute. *See* Mo. Rev. Stat. § 621.015. It includes five "commissioners" who are "appointed by the governor with the advice and consent of the senate," just like Article III judges in the federal system. *Id*. The commissioners must be "attorneys at law admitted to practice before the supreme court of Missouri," and cannot "practice law during their term of office." *Id*.

*Second*, the AHC "act[s] as a tribunal to hear and determine" certain "case[s]." *OED* at 1091. The AHC "conduct[s] hearings and

23

make[s] findings of fact and conclusions of law" in a variety of cases. Mo. Rev. Stat. § 621.045. Relevant here, it has jurisdiction to hear cases over licensing decisions from over a dozen state agencies. *Id*. That includes the power to hear "contested cases," during which the AHC determines the "legal rights, duties or privileges of specific parties." *Id*. § 536.010(4). In other words, the AHC is "established for the administration of justice." *Webster's Second* at 611. Also important, the AHC can hear federal statutory questions, like the one brought before the AHC in this case. *See, e.g., Balloons Over the Rainbow, Inc. v. Dir. of Revenue*, 427 S.W.3d 815 (Mo. 2014) (reviewing the AHC's interpretation of a federal statute).

*Third*, cases before the AHC follow the same general procedures as lawsuits in other courts. The petitioner files a "complaint or petition" and the opposing party must filed a "responsive pleading . . . within the time limits specified for filing an answer under the rules governing civil practice in circuit courts in Missouri." *Id*. § 536.068.1. There are rules of evidence, *see id*. § 536.070, rules for discovery, *id*. § 536.075, and the AHC can issue subpoenas. *Id*. § 536.077. It is also required to issue written decision that include "findings of fact and conclusions of law." *Id*. § 536.090. The Missouri Supreme Court describes these decisions as

24

"judgment[s]." *E.g.*, *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 179 S.W.3d 266, 270 (Mo. 2005). The AHC's decisions are binding on the parties, subject to an appeal to a Missouri circuit court. *Id.* § 536.100. But on appeal, "[f]indings of fact by the Commission are binding," on the appellate courts, as are "credibility determinations." *Gate Gourmet, Inc. v. Dir. of Revenue*, 504 S.W.3d 59, 61 (Mo. 2016); *Donaldson v. Mo. State Bd. of Registration for the Healing Arts*, 615 S.W.3d 57, 69 (Mo. 2020).

Beyond the procedures set out in Chapters 621 and 536 of Missouri's Revised Statutes, the AHC is also required to publish its own "rules of procedure for the conduct of proceedings." *Id.* § 621.198. Those rules reinforce that the AHC is a court within the ordinary meaning of the term. For example, "only a licensed attorney may represent any other person," before the AHC. 1 C.S.R. § 15-3.250(3). And the AHC has rules for computing time, *id.* § 15-3.230, complaints, *id.* § 15-3.350, answers and other responsive pleadings, *id.* § 15-3.380, intervention, *id*, § 15-3.390, discovery, *id.* § 15-3.420, and sanctions. *Id.* § 15-3.425.

In sum, the AHC is a "State court" in the sense that matters most—the everyday, ordinary meaning of the term. "[T]hat which looks like a duck, walks like a duck, and quacks like a duck will be treated as a duck

25

even though some would insist upon calling it a chicken." *United States v. Saeugling*, 826 F. App'x 577, 578 (8th Cir. 2020) (citation omitted).  The district court erred when it concluded otherwise.

### C. The district court's interpretation fails to capture the ordinary meaning of the text.

The district court's interpretation of "State court" in § 1441 was tainted by two errors:  (1) it was a hyper literalist, not textualist, reading of the language; and (2) it elevated a technical legal meaning over the ordinary meaning.

*First*, the district court's interpretation amounts to what the Supreme Court had repeatedly condemned as "uncritical literalism." *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality op.); *see also Utah Junk Co. v. Porter*, 328 U.S. 39, 44 (1946) ("[L]iteralness may strangle meaning.").  The district court intuited the meaning of "State court" without conducting any analysis of the ordinary meaning of the term.  This is exactly the error the First Circuit criticized in *Volkswagen de Puerto Rico v. Puerto Rico Labor Relations Board,* when it refused "to be content with a Steinian rendering of 'a board is a board is a board.'" 454 F.2d 38, 44 (1st Cir. 1972) (referencing Gertrude Stein's famous observation in her poem *Sacred Emily* that "a rose is a rose is a rose.").

Holding that a court is a court when it is a court is not helpful—it does not capture the "fair meaning of the text (the textualist's touchstone)." Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 356 (2012).

*Second*, the district court's exclusive focus on the constitutional origin of a tribunal falls into another interpretive error—elevating specialized meaning over ordinary meaning. "It is a 'fundamental canon of statutory construction' that, 'unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.'" *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014) (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979)). It is easy to see why judges and lawyers are inclined to fall back on a specialized meaning of "court." Someone with specialized legal training and experience practicing law reflexively understands the difference between an Article III court and an Article I court. But as discussed above, that difference is not reflected in "ordinary" or "common" meaning of a "court." *Id.* As even *Black's Law Dictionary* recognizes, "[t]he word 'court' is *often* employed in statutes otherwise than in its strict technical sense." *Court*, Black's Law Dictionary 425 (4th ed. 1951) (emphasis added).

Appellate Case: 25-1111    Page: 39    Date Filed: 04/01/2025 Entry ID: 5501982

This Court's decision in *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020), is instructive. Asked to determine whether airport Transportation Security Officers (TSOs) were "officers" under the Federal Tort Claims Act, this Court relied on the "ordinary dictionary definition" of "officers." *Id*. at 848. The broad definitions from the time the FTCA was enacted "better reflect[ed] the ordinary meaning of *officers*" than the "more specific definitions" offered by the government. *Id*. at 848–49. This Court rejected the specialized and technical understanding of "officers" that would cover only those who were "appointed under the authority of the federal government." *Id*. at 849. The plain and ordinary meaning of "officer" was simply a person who is "charged with a duty," and "charged by a superior power . . . with the power and duty of exercising certain functions." *Id*. at 848 (citation omitted) (omission in original) (quoting *Officer*, Webster's New Int'l Dictionary (3d ed. 1971); *Officer*, Black's Law Dictionary (4th ed., rev. 1968)).

The court below made the interpretive error that this Court rejected in *Iverson*. Rather than use the ordinary meaning of "court" as "tribunal established for the administration of justice," *Webster's Second* at 611,

the district court relied on a technical legal understanding. Lawyers and judges might understand "courts" to mean only tribunals that fall within Article III or the state equivalent, just as they might understand "officers" to be only those appointed through specific procedures. But those technical meanings do not control where, as here, it would restrict the ordinary or natural meaning as reflected in dictionary definitions from the time of enactment.

## II. The district court's interpretation of "State court" undermines the purpose of the removal statute of ensuring that federal courts decide federal questions.

Rather than interpret § 1441 according to proper principles of statutory interpretation, the district court accepted state-court characterizations of the AHC as binding. That was wrong for two reasons. First, the Supreme Court and this Court have held that a state's characterization of its own tribunals is not binding for the purposes of removal. And second, that approach undermines the important constitutional purposes of removal—supremacy and uniformity.

### A. Characterization of a tribunal under state law is not dispositive for removal purposes.

The district court held that the term "State court" in § 1441 covers only "a tribunal that is deemed to be a court under state law." App. 144;

Appellate Case: 25-1111    Page: 41    Date Filed: 04/01/2025 Entry ID: 5501982

R. Doc. 28, at 6. The Supreme Court and this Court have expressly rejected that view. The Supreme Court has held that the removal statute "was intended to be uniform in its application, unaffected by local law definition or characterization of the subject matter to which it is to be applied." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 104 (1941). For "determining in what instances suits are to be removed from the state to the federal courts," it must be "construed . . . irrespective of local law." *Id. See also Comm'rs of Rd. Improvement Dist. No. 2 v. St. Louis Sw. Ry. Co.*, 257 U.S. 547, 557–58 (1922) ("The question of removal under the federal statute is one for the consideration of the federal court. It is not concluded by the view of a state court as to what is a suit within the statute."). And this Court has been just as clear. "The question whether a civil action is removable and has been properly removed is one for the consideration of the federal court and is not controlled by State law." *Stoll v. Hawkeye Cas. Co.*, 185 F.2d 96, 99 (8th Cir. 1950); *see also* 14C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed. 2024) ("[F]ederal law determines whether the requirements for removal have been satisfied.").

Appellate Case: 25-1111   Page: 42   Date Filed: 04/01/2025 Entry ID: 5501982

Allowing states to decide what is a "court" would interfere with the federal courts' "duty" to "say what the law is." *Marbury v. Madison*, 1 Cranch 137, 177 (1803). The proper test is not whether Missouri courts think that the AHC qualifies as a court. It is whether the AHC fits within the ordinary meaning of "State court" in § 1441(a). Of course, federal courts will have to look to state law to determine whether a given tribunal has the *characteristics* that make something a court; they cannot base the decision on name alone. But by deferring to how state law *brands* the tribunal to determine what counts as a "State court," the district court deviated from this Court's and the Supreme Court's instruction that the definition of "court" is controlled by federal law, not state law.

Because the AHC falls within the broad, common understanding of a "court" as a "tribunal established for the administration of justice," *Webster's Second* at 611, it is a "State court" for the purposes of § 1441. That is true even if the AHC does not exercise the "judicial power" under the Missouri Constitution as a matter of state law, *see State Tax Comm'n v. Admin. Hearing Comm'n,* 641 S.W.2d 69, 76 (Mo. 1982), just like the U.S. Court of Federal Claims is still a "court" despite not exercising Article III authority. Missouri state law's characterization of whether

31

the AHC is a state court simply does not control whether a case before the AHC may be removed, and the district court erred in concluding otherwise.

Furthermore, viewed through the proper interpretive lens, Missouri Supreme Court precedent in fact *confirms* that the AHC is a "State court" in the ordinary sense of the words.

*First*, the Missouri Supreme Court has recognized that the AHC functions as a court—it is just a court of *limited jurisdiction*. The AHC was created "to exercise independent and impartial decisionmaking authority in disputes between agencies and those persons affected by their actions." *Id.* at 75. It exercises "quasi judicial powers," including the "ascertainment of facts and the application of existing law thereto in order to resolve issues within the given area of agency expertise." *Id.* (quoting *Liechty v. Kansas City Bridge Co.*, 162 S.W.2d 275, 279 (Mo. 1942)). Thus, it easily fits within the ordinary meaning of the term "courts" as discussed above.

*Second*, the Missouri Supreme Court—like the U.S. Supreme Court—distinguishes between courts "in a Constitutional sense" and courts created by statute. *Id.* (quoting *In re City of Kinloch*, 242 S.W.2d

32

59, 63 (Mo. 1951)); *see also Ex parte Bakelite Corp.*, 279 U.S. 438, 449 (1929) (distinguishing between "constitutional Courts" and "legislative Courts"). Tribunals outside Article V of the Missouri Constitution cannot exercise "'judicial power' in a constitutional sense." *Kinloch*, 242 S.W.2d at 63. But they can still "perform[] duties" that are "judicial in nature." *Id.* Put differently, the AHC may not be a court in the technical legal sense—a constitutional court. But it is a court in the ordinary sense because it is "[a]n assembly of judges or other persons legally appointed and acting as a tribunal to hear and determine any case . . . ." *OED* at 1091.

## B. The district court's analysis undermines federal supremacy and the uniform application of federal law.

The U.S. Constitution makes itself and federal law the "supreme Law of the Land." U.S. Const. Art. VI, cl. 2. Removal—and federal question removal in particular—protects that supremacy by ensuring that the federal courts are the final interpreters of the U.S. Constitution and federal law. Justice Story explained that "reasons of a higher and more extensive nature, touching the safety, peace, and sovereignty of the nation, might well justify a grant of exclusive jurisdiction" over federal questions. *Martin v. Hunter's Lessee*, 14 U.S. 304, 347 (1816). The

33

federal judicial system has a strong interest in a federal court—not Missouri's AHC—interpreting the meaning of the First Amendment, Fourteenth Amendment, and Social Security Act. It is "commonsense" that federal courts should decide federal claims that "justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

The district court's decision would also allow states to "creat[e] special proceedings or special tribunals" and thus "deprive the federal court of jurisdiction of such a suit or prevent a removal." *In re Silvies River*, 199 F. 495, 501 (D. Or. 1912). By creating a tribunal with quasi-judicial powers but placing it outside the state's judicial branch, a state could insulate some types of cases from removal. As the Supreme Court has explained, "the Supremacy Clause cannot be evaded by formalism." *Haywood v. Drown*, 556 U.S. 729, 742 (2009); *see also Williams v. Reed*, 145 S. Ct. 465, 472 (2025) (reaffirming that principle).

Another strong federal interest served by removal from tribunals like the AHC is the need for uniformity of federal law. The Supreme Court has recognized the "importance, and even necessity of uniformity

34

of decisions throughout the whole United States, upon all subjects within the purview of the constitution." *Hunter's Lessee*, 14 U.S. at 347–48. Judges of "learning and integrity, in different states, might differently interpret a statute," leading to "jarring and discordant judgments" and causing "the laws, the treaties, and the constitution of the United States" to "never have precisely the same construction, obligation, or efficacy, in any two states." *Id.* at 348. That danger is only increased with the proliferation of state tribunals such as the AHC, which multiplies the likelihood of inconsistent interpretations. It is, for example, entirely possible that an administrative tribunal in Massachusetts would reach different conclusions than Missouri's AHC about the First and Fourteenth Amendment claims here. As Alexander Hamilton put it in the *Federalist Papers*, "Thirteen independent courts of final jurisdiction over the same causes, arising upon the same laws, is a hydra in government, from which nothing but contradiction and confusion can proceed." The Federalist No. 80. The district court's reasoning would increase that hydra's heads from 13 to a multiple of 50.

Allowing removal would not, as the district court held, "enlarge [federal court] jurisdiction through expansive interpretation of statutes."

Appellate Case: 25-1111    Page: 47    Date Filed: 04/01/2025 Entry ID: 5501982

App. 144; R. Doc. 28, at 6. This case does not enlarge federal jurisdiction because the case expressly raises federal questions under the U.S. Constitution and the Social Security Act. *See* 28 U.S.C. § 1331. The opinion below acknowledged this point—and thus contradicted itself—when it explained that it was "not convinced it is a jurisdictional issue." App. 141; R. Doc. 28, at 3 n.2. As one commentator has explained, "[b]laming removal for overextending federal jurisdiction is the rough equivalent of scolding the mailman because you receive too much junk mail. In both cases, the complaint is misdirected at the delivery mechanism, not the source." Scott R. Haiber, *Removing the Bias Against Removal*, 53 Cath. U. L. Rev. 609, 661 (2004). The federal courts have jurisdiction over "all cases arising under the constitution and laws of the United States" with "no exception[s]." *Cohens v. State of Virginia*, 19 U.S. 264, 404 (1821). Hearing the federal questions in this case is no enlargement of federal jurisdiction, it is a fulfillment of the court's duty to "take jurisdiction if it should." *Id.*

## III. Under the Supreme Court's precedent, the Administrative Hearing Commission is a "State court."

The ordinary meaning of "State court" in the federal removal statute covers the AHC, and that is enough to "begin[] and end[] [the]

36

analysis." *In re Goetz*, 95 F.4th 584, 589 (8th Cir. 2024) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)).  But that conclusion is also reinforced by longstanding Supreme Court precedent on removal.  The Supreme Court had held that a case can be removed from a "court or tribunal," as long as the tribunal has the basic hallmarks of a court.  *Upshur Cnty. v. Rich*, 135 U.S. 467, 477 (1890).  In other words, a tribunal is a "State court" for removal purposes if it fits within the broad, everyday meaning of "court."  This district court dismissed that precedent, and instead followed a decision from the Ninth Circuit which made the same errors of statutory interpretation described above.

### A. Controlling Supreme Court precedent requires courts to look at the nature of a tribunal to determine whether it is a "State court" for purposes of removal.

The Supreme Court's decision in *Upshur County v. Rich* sets out the test for determining whether a case is removable:  Is the tribunal exercising "judicial functions" or "judicial powers," or only functions that are "purely administrative in [their] character?"  *Upshur Cnty.*, 135 U.S. at 477.  A case is removable "if made to a court or tribunal having power to determine questions of law and fact, either with or without a jury, and

37

there are parties litigant to contest the case on the one side and the other." *Id.*

*Upshur County* involved three Pennsylvanians challenging the tax assessment for a large plot of land they owned in Upshur County, West Virginia. *Id.* at 467–68. The land owners challenged the assessment in the "county court" of Upshur County, and then sought to remove the case to federal court in West Virginia.[1] *Id.* at 468–70. The Supreme Court held that the case was not removable. *Id.* at 477. While the tribunal was "called the 'county court'" it was not a court for removal purposes. *Id.* at 471. It had "no judicial powers, expect in matters of probate," and in "all other matters it [was] an administrative board, charged with the management of county affairs." *Id.* As such the Supreme Court explained that it was a court "*eo nomine*," in name only. *Id.* at 477.

To reach that conclusion, the Court did not look only at West Virginia's law. The bulk of the Court's analysis focused on how the county court functioned. For example, the Court explained that a case

---

[1] At that time, a plaintiff could remove to federal court if "he makes and files . . . an affidavit, stating that he has reason to believe, and does believe, that, from prejudice or local influence, he will not be able to obtain justice in such state court." *Upshur Cnty.*, 135 U.S. at 470 (omission in original).

could be removable if it was "to be proceeded in according to judicial methods." *Id*. at 473. But the county court's primary functions of "passing upon matters of mere valuation, appraisement, or proportionate distribution of expense" were "executive and administrative in their character, and not appertaining to the judicial department." *Id*. at 474. By contrast, if the case was in "a court or tribunal having power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on the one side and the other," it would be removable. *Id*. at 477. Thus, while some courts have criticized the *Upshur County* test as "functional," it is fully consistent with the text of the removal statute. Some analysis of a tribunal's functions and procedures is necessary to interpret the text of the statute. One cannot decide whether a tribunal falls within the ordinary meaning of "court" without looking at how the tribunal is constituted and what it does.

While *Upshur County* is the lead Supreme Court case on this issue, it is built on a body of precedent that supports its holding. In *Searl v. School District No. 2*, the Supreme Court held that removal was appropriate in a property condemnation proceeding in Colorado. 124

39

U.S. 197, 198 (1888). The Colorado law provided "in the first instance, for the ascertainment of the amount of compensation or damages by a commission of three freeholders." *Id.* After discussing the characteristics of the tribunal and its functioning, the Court held that "[t]he fact that the Colorado statute provides for the ascertainment of damages by a commission of three freeholders, unless at the hearing a defendant shall demand a jury, does not make the proceeding from its commencement any the less a suit at law" for removal purposes. *Id.* at 199. The Court stressed that because the case was an "adversary judicial proceeding from the beginning," the case was "properly removed." *Id.* at 200. As in *Upshur County*, the dispositive question was whether the tribunal functioned as a court, not its characterization under state law.

Lower federal court decisions predating *Upshur County*—and cited approvingly in *Searl*—are also helpful. In *Colorado Midland Ry. Co. v. Jones*, then-Judge Brewer held that the same Colorado property condemnation proceedings addressed in *Searl*, were removable. 29 F. 193 (C.C.D. Colo. 1886). Even through the proceedings were "in some respects, . . . not in accord with the ordinary proceedings for the trial of a cause," the case was still removable because "proceedings assimilate very

40

closely with the ordinary proceedings of a court at law." *Id.* at 195. Judge Brewer also warned that a state cannot "by making special provisions for the trial of any particular controversy, prevent the exercise of the right of removal." *Id.* at 196. Rather, "Courts have always looked beyond the mere form,—tried to go down to the substance" to determine whether a case is removable. *Id.*

### B. The Supreme Court and lower federal courts followed *Upshur County* for decades.

The Supreme Court affirmed its reasoning in the years following the *Upshur County* decision. In *Commissioners of Road Improvement District No. 2 v. St. Louis Southwest Railway Co.*, the Supreme Court rejected the Arkansas Supreme Court's decision that a suit challenging a tax assessment was not removable. 257 U.S. 547 (1922). The Court explained that the "question of removal under the federal statute is one for the consideration of the federal court" and it "is not concluded by the view of a state court as to what is a suit within the statute." *Id.* at 557–58. While the tribunal in that case also had administrative and legislative duties, it was "functioning as" a court at the time of removal. *Id.* at 557. The proceedings had "all the elements of a judicial controversy, to wit, adversary parties and an issue in which the claim of

41

one of the parties against the other, capable of pecuniary estimation, is stated and answered in some form of pleading, and is to be determined." *Id.* The case confirms that a tribunal's function, not state law, controls the removal analysis.

This Court has also followed the Supreme Court's approach in *Upshur County* and its progeny. Asked to determine whether a tax proceeding was removable, this Court explained that "[i]f the tax proceeding, at the time the petition for removal was filed, was a contest inter partes over property or the payment of money, before a judicial or quasi judicial body empowered to hear and determine the rights of the contestants, it was then removable." *Smith v. Douglas Cnty.*, 254 F. 244, 245 (8th Cir. 1918).

Several other lower federal courts have held similarly. One federal district court explained that "any civil proceeding in a *state tribunal* in which a judgment or decree is sought as to the rights of the parties and presented by the pleadings for judicial determination" is removable, "regardless of the forum or tribunal before which the matter is pending." *In re Silvies River*, 199 F. at 501. That principle ensures that a "state

42

cannot, by creating special proceedings or special tribunals, deprive the federal court of jurisdiction of such a suit or prevent a removal." *Id*.

Another court explained, "the legislature of a state cannot, by making special provisions for the trial of particular controversies, nor by declaring such controversies to be special proceedings and not civil suits at law or in equity, deprive the federal courts of jurisdiction nor prevent a removal." *In re The Jarnecke Ditch*, 69 F. 161, 163 (C.C.D. Ind. 1895). States may "provide for the trial of any cause in some special way unknown to the methods of procedure at law," but the case is removable "whatever the method of procedure." *Id*. States do not "have the power, by giving new names to legal proceedings, to change their essential character," and courts must "look beyond forms to the substance" when applying the removal statute. *Id*.

The first court to deem the *Upshur County* analysis a "functional" test was *Tool & Die Makers Lodge No. 78 v. General Electric Co.*, 170 F. Supp. 945 (E.D. Wis. 1959). That case considered whether the Wisconsin Employment Relations Board was a "State court" for the purposes of § 1441. *See id*. at 949–50. Relying on *Upshur County*, the court explained that "it is clear that the Supreme Court of the United States has adopted

43

a functional rather than a literal test." *Id.* at 950. So "whether a proceeding may be regarded as an action in a State court within the meaning of the statute is determined by reference to the procedures and functions of the State tribunal rather than the name by which the tribunal is designated." *Id.* The court held that the case was removable because the Board proceedings had a "judicial character." *Id.* A Wisconsin Supreme Court's decision that the Board did not exercise "judicial function" was "not decisive on the question as to whether the tribunal is a court" because state laws "cannot operate to defeat the right of a litigant otherwise entitled to have his cause heard in Federal court." *Id.* at 950.

Other federal circuit courts subsequently adopted the *Tool & Die Makers*' description of a "functional" test. Looking to *Upshur County*, *Commissioners of Road Improvement District No. 2*, and *Tool & Die Makers*, the First Circuit set out several factors for determining whether a tribunal is a "State court" for removal purposes in *Volkswagen de Puerto Rico v. Puerto Rico Labor Relations Board*, 454 F.2d 38, 43–44 (1st Cir. 1972). *Volkswagen* held that courts should consider the tribunal's "procedures and enforcement powers," "the locus of traditional

44

jurisdiction over" the cause of action, and "the respective state and federal interests in the subject matter and in the provision of a forum." *Id*. at 44. In light of those factors, the Puerto Rico Labor Relations Board was a "State court" under § 1441. *Id*. The Court emphasized that proceedings before the Board were "*inter partes*" and that courts "ordinarily courts have adjudicated breaches of contract," the cause of action in the case. *Id*.

Other circuits have also adopted the "functional" approach. In *Floeter v. C. W. Transport*, the Seventh Circuit held it "it is necessary to evaluate the functions, powers, and procedures of the state tribunal." 597 F.2d 1100, 1102 (7th Cir. 1979). Removal from the Wisconsin Employment Relations Commission was proper because: (1) the case "would have been determined by federal law regardless of the forum in which it had been brought"; (2) the Commission's "procedures [were] substantially similar to those traditionally associated with the judicial process"; and (3) the Commission's "need to resort to the court system for enforcement of its orders does not change the essentially judicial character of the proceedings." *Id*. While the Seventh Circuit came to a different conclusion about the Illinois Liquor Control Commission in

45

*Wirtz Corp. v. United Distillers & Vintners North America*, it nonetheless applied the *Floeter*'s reasoning as controlling on the question. 224 F.3d 708, 712–13 (7th Cir. 2000).

The Fourth Circuit has likewise held—in the context of 28 U.S.C. § 1442—that removal from the West Virginia Committee on Legal Ethics was proper because it's "procedures are adjudicatory in nature." *Kolibash v. Comm'n on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989). Citing *Volkswagen*, the Court explained that to "hold this proceeding outside the operation of the removal statute would be to elevate form over substance." *Id*. The Fourth Circuit recently acknowledged this holding in *Kolibash*, in a case that raised the meaning of "State court" in § 1441. *See Zayo Grp., LLC v. Norfolk S. Ry. Co.*, 2023 WL 8230499, at *1 n.2 (4th Cir. Nov. 28, 2023). While the court declined to reach the issue, it noted that it "would have to explain any different analysis of § 1441 and § 1442."

## C. The Administrative Hearing Commission is a "State court" under the *Upshur County* line of cases.

Applying the principles set forth in *Upshur County* and its progeny, the AHC easily qualifies as a "State court" for removal purposes. Indeed, those cases set a low bar for what counts as a State court. *Upshur*

46

*County*, for example, held that a suit could be removed to federal court if the state "tribunal" had "power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on the one side and the other." 135 U.S. at 477. The requirements set out in *Commissioners of Road Improvement District No. 2* are similar. The Court described the "elements of a judicial controversy" as "adversary parties and an issue in which the claim of one of the parties against the other, capable of pecuniary estimation, is stated and answered in some form of pleading, and is to be determined." 257 U.S. at 557.

This case satisfies those criteria and more. As discussed above in Part I.B, the AHC has all the characteristics of a "court" as commonly understood. It "conduct[s] hearings and make[s] findings of fact and conclusions of law." Mo. Rev. Stat. § 621.045. It can determine the "legal rights, duties or privileges of specific parties." *Id*. § 536.010(4). And it hears contested cases—like this one—between adverse parties. *Id*. In short, it is a "tribunal" that has "power to determine questions of law and fact, either with or without a jury, and there are parties litigant to contest the case on the one side and the other." *Upshur County*, 135 U.S. at 477.

Appellate Case: 25-1111     Page: 59     Date Filed: 04/01/2025 Entry ID: 5501982

Later courts developed and elaborated on the so-called "functional" test. The AHC meets those standards too. *Tool and Die Makers*, for example, found that proceedings were of a "judicial character" because the proceedings included a complaint, answer, hearing, subpoenas, depositions, contempt powers, written record, rules of evidence, findings of fact, and orders. 170 F. Supp. at 950. The AHC has all those characteristics. *See* Mo. Rev. Stat. § 621.045 (hearings, findings); § 536.090 (orders); § 536.068.1 (complaints and answers); § 536.070 (rules of evidence); § 536.075 (rules for discovery); § 536.077 (subpoena power); 1 C.S.R. § 15-3.425 (sanction power); 1 C.S.R. § 15-3.420 (depositions).

On top of the tribunal's procedures, *Volkswagen* and *Floeter* focused on the "locus of traditional jurisdiction" and the nature of the cause of action. 454 F.2d at 44; 597 F.2d at 1102. Those factors weigh heavily for removal power here. This case presents questions of federal constitutional and statutory law. "[I]t is clear that ordinarily courts have adjudicated" this kind of case, *Volkswagen*, 454 F.2d at 44, and the issues will be "determined by federal law regardless of the forum." *Floeter*, 597 F.2d at 1102.

**D.    The district court misread *Upshur County*.**

The district court tried to distinguish *Upshur County*, but in doing so it misread the opinion in three ways.

*First*, it explained that "[t]here was no question that the matter was pending before a West Virginia state court," and "[b]ecause the matter was undeniably in a state court, there was no reason to analyze what constitutes a 'court.'"  App. 142; R. Doc. 28, at 4.  That is incorrect.  The Supreme Court explained the county court was only a "so-called" court; a court "*eo nomine*" or in name only.  *Upshur Cnty.*, 135 U.S. at 471, 477.  In other words, while the district court here held that Missouri's branding of the AHC as a commission was virtually dispositive, the Supreme Court in *Upshur County* rejected that State's branding of the county "court."  Moreover, the Supreme Court *did* analyze whether the county court constituted a court.  It explained that the West Virginia Constitution had stripped the county courts of their "judicial powers, except in matters of probate" and "[i]n all other matters it [was] an administrative board, charged with the management of county affairs." *Id*. at 471.    The Supreme Court later confirmed its holding in *Commissioners of Road Improvement District No. 2*, explaining that

49

*Upshur County* held that "the county court in considering the appeal from the assessors *was not a court*" and it "had no judicial jurisdiction under the Constitution of the state, except that of probate." 257 U.S. 547, 559–60 (1922) (emphasis added).

If the district court's analysis were correct, that point should have been dispositive. Because the county court was not "a tribunal that is deemed to be a court under state law," the Supreme Court should have stopped the removal analysis there. App. 144; R. Doc. 28, at 6. But it did not. Instead, the Supreme Court went into lengthy discussion about the nature of proceedings in the county court. The Supreme Court looked beyond *both* the name "county court" and its place in West Virginia's constitutional structure and focused on whether the tribunal was "invested with judicial functions," like the "power to determine questions of law and fact, either with or without a jury, and [that] there are parties litigant to contest the case on the one side and the other." *Upshur Cnty.*, 135 U.S. at 477.

*Second*, the district court's misreading of *Upshur County* on whether the "county court" was a "court" led to another mistake. The district court thought that *Upshur County* just considered whether the

50

case was a "suit" within the meaning of the removal statute, and "[did] not provide guidance as to whether a particular tribunal is a court." App. 143; R. Doc. 28, at 5. Not so. As explained above, the Supreme Court held that a case could be removed from "a court or tribunal" that exercised "judicial functions." *Upshur Cnty.*, 135 U.S. at 477.

But even if *Upshur County*'s analysis were limited to "suits" and not "courts," its reasoning is the same. The Supreme Court did not ask only whether the case was a "suit" as a matter of state law. It consulted state law on the issue, but held that it was "not concluded by this decision." *Id.* Whether you characterize the reasoning as "functionalism" or common-meaning textualism, the Supreme Court looked at the nature and functioning of the tribunal, not only its characterization in state law. The Court considered whether the "duties of the tribunal" were "judicial in the *ordinary sense* of that term." *Id.* at 471 (emphasis added). And it explained that a case "may become a suit within the act of congress" if it is "proceeded in according to judicial methods." *Id.* at 473. The dispositive point in *Upshur County* was that "a proceeding" cannot be removed if it is "purely administrative in its character." *Id.* at 477.

51

Thus, even if *Upshur County* considered only what counts as a "suit," its method of interpreting the removal statute applies with equal force to other terms in the same statute. It is inconsistent to interpret a "suit" for removal purposes by looking at the nature and functioning of the case, but a "court" by looking only at state law. The district court was bound by the Supreme Court's reasoning in *Upshur County*, and it was wrong to depart from that binding precedent.

*Third*, the district court dismissed *Upshur County*'s relevance because it "predates the modern removal statutes." App. 144; R. Doc. 28, at 6. But that criticism falls flat because both the modern removal statute and the one applied in *Upshur County* use the same words: "State court." *See* Rev. Stat. of the U.S., Title XIII, ch. 7, § 639 ("Any suit commenced in any *State court* . . . .").[2] Because both statutes used those words, the Supreme Court's analysis in *Upshur County* is controlling, especially because analysis is consistent with the ordinary meaning of the words as reenacted in 1948. *See supra* Part I; *see also Lamar, Archer & Cofrin, Llp v. Appling*, 584 U.S. 709, 721–22 (2018) ("When Congress"

---

[2] Available at https://archive.org/details/revisedstatutes01statgoog/page/112/mode/2up (pg. 113 of 748).

uses "the materially same language in" at statute "it presumptively [is] aware of the longstanding judicial interpretation of the phrase and intended for it to retain its established meaning.").

### E. Courts applying the literal test have misread the text of § 1441 and the Supreme Court's precedent.

Despite the Supreme Court's repeated holdings focused on the nature of a tribunal—consistent with the ordinary meaning—and not its name or status in state law, several federal circuit courts have adopted a "literal" test—really, the hyper technical test—for interpreting § 1441. While the test purports to respect the plain language of the removal statute, it misses the point of textualism. Like the district court below, the cases apply a literal or technical meaning of "State court" instead of the ordinary, everyday meaning. *See supra* Part 1.C. They also misread the Supreme Court's decisions in *Upshur County* and *Commissioners of Road Improvement District No. 2*, and reject the broader implications of its reasoning in those cases.

The district court primarily relied on *Oregon Bureau of Labor & Industries ex rel. Richardson v. U.S. West Communications*, 288 F.3d 414 (9th Cir. 2002). There, the Ninth Circuit rejected the "functional test" as going "beyond the language of the statute." *Id.* at 418. But while the

53

court claimed to by applying the "plain language" of § 1441, it conducted no analysis of the text's ordinary meaning. Rather than consulting a dictionary or using another method of discerning a word's meaning, it applied a tautology: "28 U.S.C. § 1441(a) authorizes removal only from a 'state court,' which necessarily implies that the entity in question must be a *court*." *Id*. at 418. Stating that a court must be a court is tautological shortcut, not statutory interpretation.

The Ninth Circuit also relied on the Third Circuit's rejection of *Upshur County* in *Sun Buick v. Saab Cars USA*, 26 F.3d 1259 (3d Cir. 1994). That case questioned *Upshur County*'s applicability: "[i]t does not follow that because *Upshur County* held that a court is not necessarily a 'court' for removal purposes, the Supreme Court has endorsed the view that an administrative agency might be a 'court' for removal purposes." *Id*. at 1263. It is true enough that *Upshur County* did not expressly hold that an administrative agency is a "court" for removal purposes. What matters, however, is the Supreme Court's *reasoning*. Lower courts are bound not just by the "result" of a Supreme Court precedent; they are also bound by "those portions of the opinion necessary to that result," the "rationale upon which the Court based the results of its earlier decisions."

54

*Seminole Tribe of Fla. v. Flordia*, 517 U.S. 44, 67 (1996). *Sun Buick* acknowledged that *Upshur County* "looked to the actual powers, composition and procedures of the entity in making its decision." 26 F.3d at 1262. Accordingly, it was bound to apply that reasoning to the case in front of it.

In fact, while *Sun Buick* criticized the "functional test," it did not outright reject that test. Despite its criticism, the Third Circuit in *Sun Buick* declined to decide "whether removal under section 1441(a) from an administrative agency is ever permissible in an exceptional case," because the "Pennsylvania Board of Vehicles would not qualify under any circumstances." *Id.* at 1264. The Third Circuit went on to an extensive analysis of the nature and characteristics of the Board, including its inability award relief to parties, its "dearth of judicial-type powers," and its lack of "the characteristics of a court such as disinterestedness, separation from the executive and learnedness in the law." *Id.* 1266. The court concluded that "the Board's procedures, functions, and character do not make it a court." *Id.* at 1267. So while *Sun Buick* questioned whether *Upshur County* applied, its *reasoning* tracks with the Supreme Court's.

The Tenth Circuit's decision on this issue is the least persuasive. *See Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251 (10th Cir. 2010). It falls into the same tautological reasoning flaw as *Oregon Bureau of Labor*, without actually interpreting the text. The court rejected the "'functional' test in favor of a standard application of the canons of statutory construction," but then did not apply any canons. *Id.* at 1254. And part of the opinion that claimed to "apply th[e] plain language to the facts of this case" included only one sentence, devoid of any textual analysis. *Id.* at 1255. And rather than attempt to distinguish *Upshur County*, as other cases have, the Tenth Circuit simply ignored it entirely.

Unlike the Supreme Court's decision in *Upshur County* and this Court's own decision in *Smith v. Douglas Cnty.*, 254 F. 244, 245 (8th Cir. 1918), *Oregon Bureau of Labor*, *Sun Buick*, and *Porter Trust* are not binding. Nor are they persuasive. As explained above, this Court should reject the false dichotomy between text and function. The "text," "first principles," and "the interpretive tools the Supreme Court has provided" all point in one direct. The AHC is a "State court" for the purposes of § 1441, and removal was appropriate.

56

## IV. The Department's right to have this case heard in federal court must be protected.

There is no dispute that the Department has a right to remove this case filled with federal questions to federal court. "[T]he presence of even one federal claim gives the defendant the right to remove the entire case to federal court." *Convent Corp. v. City of N. Little Rock,* 784 F.3d 479, 483 (8th Cir. 2015) (alteration in original) (quoting *Williams v. Ragnone,* 147 F.3d 700, 703 (8th Cir. 1998)). If this case is remanded, that right may be denied. After the AHC renders a decision, the losing party can file a petition for review in the Missouri circuit courts. *See* Mo. Rev. Stat. § 621.145. In other words, if the Department loses in the AHC, it will be forced to file a petition in a Missouri circuit courts and then seek to remove its own petition to federal court. In that case, the Department will nominally be the *plaintiff*, and the removal statute permits removal by *defendants* only. *See* 28 U.S.C. § 1441.

To protect the Department's right to removal, this Court should reverse the district court's decision. But if this Court does not allow removal now, it should at least clarify that the Department will be entitled to remove the case from Missouri circuit court in the future. While the Department may end up at the "plaintiff," in the circuit court,

its true role in the case is as a defendant, and a state cannot insulate cases from federal review merely by realigning the parties. Planned Parenthood has sued the State, and that will not change if the State is the one appealing the AHC's decision to the circuit court. Under those circumstances, federal courts have a "duty" to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941) (quoting *Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180 (1905)).

"For the purpose of removal, the federal law determines who is plaintiff and who is defendant." *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954). That determination is made by looking at the real interests of the parties in the suit. *See* 14C Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Juris. § 3721.1 (Rev. 4th ed. 2024) ("[T]he federal court may realign the parties according to their real interests before deciding whether a 'defendant' is seeking the removal."). The Supreme Court has held, for example, that a railroad company that was a defendant under state law, was the plaintiff for the sake of removal, because "the institution and continuance of the proceedings depend upon

58

its will." *Stude*, 346 U.S. at 580. Planned Parenthood is, and will remain, the true plaintiff even if the Department ends up as the nominally realigned plaintiff. Accordingly, this Court should confirm that alignment and protect the Department's "right to remove the entire case to federal court." *Convent Corp.*, 784 F.3d at 483. To deny removal both now *and* at a later stage of the case would leave Defendants with only the possibility of appellate review by the Supreme Court and the "possibility of appellate review by [the Supreme] Court of a state court determination may not be substituted, against a party's wishes, for [its] right to litigate [its] federal claims fully in the federal courts." *England v. Louisiana State Bd. of Med. Examiners*, 375 U.S. 411, 417 (1964).

Appellate Case: 25-1111    Page: 71    Date Filed: 04/01/2025 Entry ID: 5501982

# CONCLUSION

For these reasons, this Court should reverse the district court's remand order.

Respectfully submitted,

**ANDREW BAILEY**
ATTORNEY GENERAL

Joshua M. Divine, #69875MO
  *Solicitor General*

*/s/Dominic X. Barceleau.*
Dominic X. Barceleau, #76510MO
  *Assistant Attorney General*
Office of the Attorney General
Old Post Office Building
815 Olive St, Suite 200
St. Louis, MO 63101
Office: (314) 340-7366

*Attorney for Appellants*

60

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limits of Fed. R. App. P. 32(a)(7)(B)(i) in that it contains 12,231 words excluding the parts exempted by Fed. R. App. P. 32(f). I further certify that this document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) in that this document has been prepared in a proportionally spaced typeface using Microsoft Word (size 14 Century Schoolbook font).

*/s/ Dominic X. Barceleau*
Dominic X. Barceleau
Assistant Attorney General


# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system. Counsel for Appellee will receive a copy of the foregoing document through the CM/ECF system on March 31, 2025.

*/s/ Dominic X. Barceleau*
Dominic X. Barceleau
Assistant Attorney General

Appellate Case: 25-1111     Page: 73     Date Filed: 04/01/2025 Entry ID: 5501982